UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TRUSTEES OF THE SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION LOCAL UNION NO. 28 BENEFIT FUNDS, | |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| - against - | **12-CV-294 (PGG)(RLE)** |
| METROPOLIS SHEETMETAL CONTRACTORS, INC., et al., | |
| Defendants. | |

To the HONORABLE PAUL G. GARDEPHE, U.S.D.J.:

## I. INTRODUCTION

Trustees of The Sheet Metal Workers' International Association Local Union No. 28 Benefit Funds ("Trustees") commenced this action against Metropolis Sheetmetal Contractors, Inc. ("Metropolis"), Metropolis Sheetmetal Corp. ("Sheetmetal Corp."), and The Hanover Insurance Company ("Hanover") alleging violations of the Taft-Hartley Act, 29 U.S.C. § 185, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3) and 29 U.S.C. 1145. (Doc. No. 1) On May 4, 2012, Hanover filed a Cross-Claim and Third Party Complaint against Metropolis and Third Party Defendants Bunker Metal Fabricators, Inc. ("Bunker"), and Silvio Luca ("Defendants") alleging that Defendants had breached the Parties' indemnity contract. (Doc. No. 11) On April 30, 2015, the Honorable Paul G. Gardephe entered default judgment in favor of Hanover against Luca and referred the matter to the undersigned for an inquest into damages, attorneys' fees, and costs. (Doc. No. 45, 49)

For the reasons that follow, I recommend that the Court enter judgment for Hanover in the amount of **$81,912.76**.

## II. JURISDICTION

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the Parties are citizens of different states and the amount in controversy exceeds $75,000. Plaintiff Hanover is a corporation with its principal place of business in Massachusetts. (Doc. No. 11 at 6.) Defendant Luca is a resident in the state of New York. (*Id.*) Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2).

## III. BACKGROUND

Metropolis is a construction business. (Doc. No. 11 at 7.) Metropolis, Bunker, and Luca asked Hanover to "consider executing a bond for the payment of fringe benefit contribution on Metropolis's behalf, guaranteeing its performance of its obligations to laborers under a collective bargaining agreement with Trustees." (*Id.*) Before it would consider executing such a bond, Hanover required that Metropolis, Bunker, and Luca enter into an "Agreement of Indemnity" in favor of Hanover. (*Id.*) Under the Agreement, Defendants agreed to:

> Exonerate, indemnify, and save harmless the Surety from and against every claim, demand, liability, cost, charge, suit, judgment and expense which the Surety may pay or incur, including, but not limited to, loss, interest, court costs, and consultant and attorney fees . . . in defending any suit, action, mediation, arbitration or any other proceeding to obtain release from liability whether the Surety, in its sole discretion, elects to employ its own attorney or permits or requires Indemnitors to defend the Surety; or in enforcing any of the covenants, terms, and conditions of this Agreement."

(Doc. No. 11, Ex. A) The Agreement also required Defendants to pay "as soon as liability exists or is asserted" against Hanover either: 1) the amount asserted as a claim against Hanover; or 2) if the value of the claim is ascertainable "the amount [Hanover] deems sufficient" to protect it from any loss or expense necessary to defend against the claim, whether or not Hanover had made any payments yet. (*Id.*) After the Agreement was executed, Hanover executed a bond on behalf of

2

Metropolis guaranteeing that Metropolis would perform its obligations under a collective bargaining agreement with Trustees: specifically, that Metropolis would make timely payment of all pension, vacation, and other contributions and wages to workers covered under the agreement. (*Id.*)

On January 13, 2012, Trustees commenced this action against Metropolis, Sheetmetal Corp. and Hanover alleging that Metropolis (and Hanover as Metropolis's indemnitor) had failed to pay out fringe benefit contributions under a collective bargaining agreement between the Parties for the period of November 25, 2009, through December 21, 2011. (Doc. No. 1) Trustees sought interest, liquidated damages, attorneys' fees, court costs and disbursements in the minimum amount of $220,261.70 as well as "damages in the amount of any additional contributions and/or delinquency charges which may become due during the course of litigation." (*Id.* at 7.)

On May 4, 2012, Hanover filed a Cross-Claim and Third Party Complaint against Metropolis and Third Party Defendants Bunker and Luca ("Defendants") alleging that Defendants had breached the Parties' indemnity contract by failing to deposit cash collateral with Hanover in the amount of $220,621.70 plus interest, and reimbursements for costs and attorneys' fees. (Doc. No. 11)  Hanover has already secured judgment on its cross-claim against Metropolis and does not seek judgment against Bunker because it has not been able to effectuate service against that entity. (Doc. No. 41 at 2.)

Judge Gardephe held an initial conference with the Parties on April 2, 2012. On January 10, 2013, Trustees filed a Stipulation of Dismissal dismissing Trustees' claims and causes of action against Hanover. (Doc. No. 29) On February 12, 2013, the Court entered default judgment in favor of Trustees against Metropolis and Sheetmetal Corp. in the amount of $671,313.15 plus

court costs and disbursements in the sum of $430. (Doc. No. 30) On March 8, 2013, the Court, in error, entered default judgment in favor of Trustees against Metropolis in the amount of $220,621.70 (Doc. No. 32) The Court entered corrected default judgment on March 3, 2015, clarifying that its March 8 order awarded judgment in favor of Hanover rather than Trustees. (Doc. No. 39) The Court further held that the corrected order would relate back to the March 8, 2013 Order. (*Id.*)

On April 16, 2015, the Court: 1) ordered Luca to show cause why an order directing the entry of default judgment against him in the sum of $73,375.60, plus additional interest, costs and disbursements should not issue; and 2) scheduled a "show cause" hearing for April 30, 2015. (Doc. No. 40) On April 20, 2015, Hanover filed affidavits in support of default judgment. (Doc. Nos. 41-44) On April 30, 2015, the Court entered default judgment against Luca and referred the matter to the undersigned for an inquest into damages, attorneys' and costs. (Doc. No. 45)

On May 5, 2015, Hanover asked the Court to complete the inquest based upon the affidavits filed in support of default judgment rather than a hearing. (Doc. No. 46)

### III.  DISCUSSION

**A.   Standard for Default Judgment**

Rule 55 of the Federal Rules of Civil Procedure requires that a court enter default judgment against a party who has "failed to plead or otherwise defend." R. Civ. P. 55(a).  After default judgment, a court accepts factual allegations as true, except those relating to damages. *Cotton v. Slone*, 4 F.3d 176 (2d Cir. 1993).  While a court usually conducts an inquest hearing to determine damages, a hearing is not necessary where extensive documentary evidence is available. R. Civ. P. 55(b)(2); *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105 (2d Cir. 1997).  A court should take any necessary steps to

4

establish damages with reasonable certainty. *Id.* at 111. The damages awarded must not "differ in kind from" what the plaintiff demands in the pleadings. R. Civ. P. 54(c). *See also, Silge v. Merz*, 510 F.3d 157 (2d Cir. 2007).

Here, the Court ordered default judgment after Luca failed to retain counsel, appear at conferences, or attend a subsequent default hearing held by the Court. Luca further failed to appear at an inquest telephone conference and did not provide any documentary evidence regarding damages. Hanover has submitted sufficient documentary evidence to allow for a computation of damages. Hanover seeks a total of $62,875.60.

**B.    Computation of Damages**

    **1.  Damages for Breach of Contract**

Damages for breach of contract are determined by calculating the "amount necessary to put the plaintiff in the same economic position he would have been in had the defendant fulfilled his contract." *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490 (2d Cir. 1995). Unless the amount of damages is certain, a court entering default judgment is required to make an independent determination of the sum it awards. Fed. R Civ. P. 55. A court awards prejudgment interest according to the contractual interest rate. *Astoria Fed. Sav. and Loan Ass'n v. Rambalakos*, 49 A.D.2d 715, 716 (2d Dep't 1975).

Hanover stated in its Third Party Complaint that the limit of its liability under the Bond was $40,000 and demanded that Defendants deposit with Hanover the sum of $50,000 to be used as collateral to offset any losses that Hanover might sustain as a result of the claims against the bond. (Doc. No. 11 at 5.)

Hanover argues that no inquest or hearing is necessary because the Agreement between the Parties states that "Vouchers or other evidence of payment by the Surety shall be conclusive

evidence of the fact and amount of such liability, necessity, or expediency and of the Indemnitors' liability to the Surety therefor." (Doc. No. 41 at 3) Having reviewed the "Agreement of Indemnity" the Court finds that Luca was contractually bound to "immediately reimburse the Surety for any and all payments and disbursements made . . . under the Surety's belief that liability for the payments existed or that payment was necessary or expedient . . . ." (Doc. No. 42, Ex. A at 1, Section 3.) The invoices Hanover submitted to the Court reflect $62,875.60 in expenditures: 1) $40,000 in a payment directly to "Sheet Metal Workers Local 28 Funds" and $22,875.60 in legal costs and disbursements. (Doc. No. 42, Ex. B)

The amount requested is consistent with Luca's obligations under the contract and not "differ[ing] in kind from, or exceed in amount, what is demanded in the pleadings." The Court therefore recommends an award of damages of **$62,875.60**. *See* Fed. R. Civ. P. 54; *Lliviganay v. Cipriani, 110 LLC*, No. 09-CV-0737 (LAK), 2009 WL 1044606, at *1 (S.D.N.Y. Apr. 14, 2009).

In addition, applying a nine percent per annum rate from May 4, 2012 (the date the Complaint was filed), until September 15, 2015, Hanover would have accrued $19,037.16 in interest fees.[1] N.Y. C.P.L.R. 5003; 5004 (McKinney). Therefore, I recommend an interest award of **$19,037.16**, increased proportionally for each day after September 15, 2015, until this Report and Recommendation is adopted or modified.

## IV.  CONCLUSION

Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of

---

[1] The Court used the following formula to calculate the damages award: Principal **x** Annual Interest Rate **x** Number of Months ÷ 12. Here, $62,875.60 x .09 x 40.37

the Court and served on all adversaries, with extra copies delivered to the chambers of the

Honorable Paul G. Gardephe, 40 Foley, Room 2204, New York, New York 10007, and to the

chambers of the undersigned, 500 Pearl Street, Room 1970, New York, New York 10007.

Failure to file timely objections shall constitute a waiver of those objections both in the District

Court and on later appeal to the United States Court of Appeals.  *See Thomas v. Arn,* 474 U.S.

140, 150 (1985); *Small v. Sec'y of Health & Human Servs.,* 892 F.2d 15, 16 (2d Cir. 1989) (*per*

*curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed. R. Civ. P. 72, 6(a), 6(d).


**DATED: August 31, 2015**
**New York, New York**


Respectfully Submitted,


The Honorable Ronald L. Ellis
United States Magistrate Judge